Daniel Vargas
34802 W. Western Blvd.
Arlington, Arizona 85322
danny.vargas4546@gmail.com
Tel: (480)297-268
**Plaintiff, Pro Se**

FILED ___ LODGED
___ RECEIVED ___ COPY

OCT 0 7 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

DANIEL VARGAS,

    *Plaintiff,*

vs.

MLEM PROPERTIES, INC.,

    *Defendant.*

Case No.: **CV24-02685-PHX-MTL**

**PLAINTIFFS' COMPLAINT**

## I. INTRODUCTION

1. Plaintiff, Daniel Vargas (hereinafter "Plaintiff"), proceeding *Pro Se,* hereby brings this Complaint against Defendant, MLEM Properties, Inc. (hereinafter "Defendant"), and, in support thereof, respectfully states and alleges as follows:

2. Plaintiff, as an aggrieved party, seeks redress for multiple statutory violations and Wrongful Employment actions perpetrated by Defendant, which constitute willful and egregious breaches of Federal and State Law, resulting in significant harm to Plaintiff's professional standing, financial stability, and emotional well-being. Plaintiff asserts that Defendant's actions were conducted in bad faith, with retaliatory intent, and in flagrant disregard for Plaintiff's rights under the applicable Employment Statutes, including but not limited to, Title VII of the Civil Rights Act of 1964 and the Arizona Employment Protection Act.

1

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under federal laws, including, but not limited to, the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., which prohibits retaliation and discrimination in employment, and the Whistleblower Protection Act, 5 U.S.C. § 2302(b), which safeguards employees from adverse employment actions for engaging in protected whistleblower activities. The federal questions presented by these statutes invoke this Court's authority to adjudicate and resolve matters involving substantial federal issues.

4. This Court also has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a), as such claims are inextricably intertwined with the federal claims, sharing a common nucleus of operative facts. These state law claims include, but are not limited to, violations of the Arizona Employment Protection Act, A.R.S. § 23-1501 et seq., and the Arizona Whistleblower Act, A.R.S. § 38-532, which prohibit employer retaliation against employees for reporting violations of law and engaging in protected activities. Because the state law claims arise from the same employment actions and retaliatory conduct as the federal claims, they form part of the same case or controversy under Article III of the United States Constitution, thereby allowing this Court to exercise its supplemental jurisdiction.

5. Venue is proper in the District of Arizona pursuant to **28 U.S.C. § 1391(b)**, as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this judicial district. Specifically, Defendant's retaliatory conduct, adverse employment actions, and violations of both federal and state law took place at Plaintiff's primary workplace, located within the District of Arizona. Additionally, Defendant maintains its principal place of business within this District and conducts substantial and continuous business operations throughout the State of Arizona. As such, the Defendant is subject to personal jurisdiction in this District, and the Venue

2

is proper as the events at issue are closely connected to this forum.

## II. PARTIES

6. Plaintiff, Daniel Vargas (herein "Plaintiff"), is a natural person and a resident of Arlington, Arizona, and, at all times relevant to this action, was employed by Defendant as a Chief Engineer at the SpringHill Suites Phoenix Tempe Airport. The Plaintiff is an experienced professional in his field and performed his duties in a manner that met or exceeded the legitimate business expectations of his employer. Throughout his employment, Plaintiff complied with all company policies, procedures, and directives, thereby establishing a satisfactory record of performance. Plaintiff's workplace contributions were duly recognized until the events giving rise to this Complaint, which resulted in his unlawful suspension, retaliatory treatment, and constructive discharge by Defendant.

7. Defendant, MLEM Properties, Inc. (herein "Defendant"), is a duly organized and existing Corporate Entity under the Laws of the State of Arizona, with its principal place of business located at 290 S. Alma School Rd., Suite 13, Chandler, Arizona. Defendant engages in the ownership, management, and operation of commercial properties, including hospitality establishments such as the SpringHill Suites Phoenix Tempe Airport, where Plaintiff was employed. At all times material to this Complaint, the Defendant maintained control over the Policies, Procedures, and Employment Practices at the aforementioned location and was the ultimate decision-maker regarding the adverse employment actions taken against Plaintiff.

8. Defendant, by and through its Agents, Officers, and Managerial Staff, was responsible for promulgating and enforcing company-wide Employment Practices, including those pertaining to Employee Discipline, Workplace Harassment, Compliance with Anti-Retaliation Statutes, and adherence to Federal and State Employment Laws. Moreover, Defendant exercised supervisory authority over Plaintiff, thereby making it directly accountable for the retaliatory and unlawful

actions that serve as the basis for this Complaint.

9. The Defendant's conduct, as alleged herein, was carried out by individuals acting within the scope of their employment and in furtherance of Defendant's business interests, making Defendant vicariously liable for the wrongful acts committed against Plaintiff.

10. At all relevant times, the Defendant's Policies, Decisions, and Retaliatory Actions were ratified, authorized, or otherwise condoned by its upper Management, thereby subjecting the Defendant to direct liability for the Statutory and Common Law violations outlined in this Complaint.

### III. FACTUAL ALLEGATIONS

11. Plaintiff, Daniel Vargas, was employed by Defendant, MLEM Properties, Inc., as Chief Engineer at the SpringHill Suites Phoenix Tempe Airport beginning on August 16, 2011. Throughout his employment, Plaintiff performed his job duties with diligence, professionalism, and an unwavering commitment to maintaining operational efficiency and safety compliance. The Plaintiff regularly met or exceeded the expectations of his role, consistently received positive evaluations, and contributed to the overall success of the facility. Plaintiff's conduct, work ethic, and adherence to company Policies rendered him an invaluable asset to the Organization until the retaliatory actions that gave rise to this Complaint.

12. In or around October 2023, Plaintiff became aware of a workplace Sexual Harassment incident involving a fellow female employee. The female employee confided in Plaintiff regarding repeated instances of inappropriate and unwelcome conduct by a Senior Male Manager, which created a hostile and intimidating work environment for her. In accordance with Defendant's internal reporting procedures and in good faith reliance on the Anti-retaliation Protections under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), Plaintiff reported the incident to Defendant's Management, expecting that the Company would undertake a

4

prompt and thorough investigation, as required by federal law.

13. Rather than addressing Plaintiff's Complaint with the seriousness it warranted, Defendant's Management viewed Plaintiff's report as a challenge to their authority and an inconvenience. Defendant, instead of initiating a legally mandated investigation and taking corrective measures, subjected Plaintiff to a series of retaliatory actions intended to undermine his position and dissuade him from further participation in protected activities. These retaliatory measures included isolating Plaintiff from key communications, excluding him from decision-making meetings that were central to his role, subjecting him to unjustified scrutiny, and spreading defamatory statements among the staff that questioned Plaintiff's loyalty and professionalism.

14. Defendant's conduct constituted not only a failure to adhere to its own internal Anti-Harassment and Anti-Retaliation Policies, which are designed to ensure a safe and non-discriminatory workplace but also a clear and unambiguous violation of Federal Anti-Retaliation provisions set forth under 42 U.S.C. § 2000e-3(a). Under 42 U.S.C. § 2000e-3(a), it is unlawful for an Employer to discriminate against any Employee or Applicant for Employment because such individual has opposed any practice made unlawful by Title VII, or because such individual has made a charge, testified, or assisted, or participated in any manner in an investigation, proceeding, or hearing under the statute. This provision is a cornerstone of Federal Employment Law, specifically designed to protect Employees who engage in protected activities from being subject to retaliatory actions, such as suspension, demotion, or termination, by their Employer.

15. Defendant's actions—including the immediate suspension of Plaintiff, the conversion of his suspension from paid to unpaid status, and the public posting of his position—amount to precisely the type of retaliatory measures that 42 U.S.C. § 2000e-3(a) was intended to prevent. The Plaintiff's opposition to unlawful Discriminatory practices and his subsequent reporting of

5

the hostile work environment he observed on behalf of a fellow employee constituted protected activities under this provision. Defendant, instead of investigating and remedying the misconduct in accordance with the principles set forth under *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), opted to engage in conduct intended to punish and dissuade Plaintiff from exercising his rights and those of his colleagues.

16. The U.S. Supreme Court has long held that the anti-retaliation provisions of Title VII are to be construed broadly to encompass any employer action that might dissuade a reasonable worker from making or supporting a charge of discrimination, as stated in *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53 (2006). The Court in Burlington emphasized that a retaliatory act need not be directly related to the terms and conditions of employment, nor must it involve tangible economic harm, to constitute a violation. Rather, any conduct that could reasonably be expected to have a chilling effect on an employee's willingness to engage in protected activities falls within the purview of 42 U.S.C. § 2000e-3(a). Here, Defendant's retaliatory campaign—including isolating Plaintiff, diminishing his responsibilities, and ultimately altering his employment status—was clearly designed to silence Plaintiff's opposition to its unlawful employment practices.

17. Furthermore, Defendant's actions were not isolated incidents of managerial oversight but rather part of a sustained pattern of retaliatory conduct that began immediately after Plaintiff's protected disclosures and continued unabated, thereby creating a hostile and oppressive work environment. Defendant's failure to provide Plaintiff with a legitimate, non-retaliatory reason for its adverse employment actions further exacerbates the severity of this violation. This is compounded by Defendant's refusal to engage in the interactive process to address Plaintiff's grievances, contrary to the procedural safeguards enshrined under Title VII and reinforced by the

6

Equal Employment Opportunity Commission (herein "EEOC") guidelines, which mandate employer compliance with anti-retaliation measures and prompt response to Employee Reports of Discrimination and Retaliation.

18. Defendant's retaliatory conduct—manifested through repeated adverse employment actions against Plaintiff—constitutes a flagrant breach of Federal Employment Law and underscores a deliberate disregard for the statutory protections afforded to Employees under 42 U.S.C. § 2000e-3(a). Accordingly, Plaintiff is entitled to relief, including but not limited to, compensatory damages, punitive damages, and equitable remedies, to be made whole for the harm suffered as a result of Defendant's unlawful retaliation.

19. In January 2024, Plaintiff, acting as a responsible Employee and Citizen, reported additional serious legal violations committed by Defendant. Specifically, Plaintiff contacted the U.S. Department of Homeland Security to disclose that Defendant was knowingly employing undocumented workers, in violation of 8 U.S.C. § 1324a(a)(1), which makes it unlawful for employers to knowingly hire or continue to employ unauthorized aliens. This report was made in good faith and was intended to bring the Defendant's unlawful practices to the attention of the appropriate federal authorities.

20. Plaintiff's disclosure to Homeland Security was a protected "Whistleblower Activity" under the Whistleblower Protection Act, 5 U.S.C. § 2302(b), and the Arizona Whistleblower Act, A.R.S. § 38-532, both of which prohibit Employers from retaliating against Employees for reporting violations of Federal or State Law. Under these statutes, Plaintiff's actions were considered protected disclosures, and any retaliatory action taken against him for such disclosures was strictly prohibited by law.

21. Shortly after making the disclosure, Plaintiff began experiencing heightened retaliatory conduct from Defendant. On May 26, 2024, Defendant, through its Assistant General Manager,

notified Plaintiff through text message that he was being placed on immediate suspension with pay. No legitimate business reason, justification, or detailed explanation was provided for this abrupt decision. The Plaintiff was not informed of the alleged basis for his suspension, nor was he given the opportunity to defend himself or provide input regarding any purported concerns. This sudden adverse action, executed without due process, was in direct contravention of the procedural safeguards guaranteed under A.R.S. § 23-352, which requires Employers to provide written notice of the specific reasons for any Adverse Action affecting employment status, especially in cases where such actions may implicate Public Policy concerns or Contractual Rights.

22. On June 28, 2024, Defendant escalated its retaliatory actions by converting Plaintiff's suspension from paid to unpaid status, effective July 6, 2024, under the guise of needing to "utilize other personnel." This pretextual justification was clearly manufactured to punish Plaintiff for engaging in protected Whistleblower activity and for reporting workplace harassment. The absence of any operational basis for this change in Plaintiff's status further evidence of Defendant's malicious intent and unlawful motivation.

23. During this period, Defendant took additional steps to replace Plaintiff permanently, despite his suspension being presented as a temporary measure. Defendant posted Plaintiff's position on public job boards, including Indeed.com and LinkedIn, signaling to the entire Organization and to the public that Plaintiff's employment was being terminated in all but name. This conduct created an environment of uncertainty and humiliation, undermining Plaintiff's professional standing and severely damaging his reputation within the industry.

24. On or about July 4, 2024, Plaintiff, in a concerted effort to resolve the escalating employment dispute in an amicable manner and to mitigate further economic and reputational harm, sent a formal Demand for Damages, Reinstatement, and Suspension with Pay Pending

8

Mediation ("Demand Letter") to Defendant. In this Demand Letter, Plaintiff delineated the unlawful and retaliatory nature of Defendant's adverse employment actions and articulated his rights under both state and federal employment laws. Specifically, Plaintiff cited the Arizona Employment Protection Act, A.R.S. § 23-352, which mandates that employers provide clear, specific, and detailed written notice of the reasons for taking adverse employment actions, including suspensions and terminations, particularly when such actions may adversely impact the employee's professional standing or financial stability.

25. Plaintiff's letter referenced that although A.R.S. § 23-352 primarily pertains to terminations, Arizona courts have interpreted the statutory language broadly to encompass suspensions and other significant employment actions that materially alter the terms and conditions of employment. Plaintiff cited precedent demonstrating that A.R.S. § 23-352 embodies fundamental principles of due process and notice, especially where public policy concerns or contractual rights are implicated. Plaintiff highlighted that Arizona courts have long held that due process protections extend beyond mere termination and should apply to all adverse employment actions that could potentially deprive an employee of property interests or statutory rights (see *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370 (1985), extending public policy exceptions to suspension cases). Thus, Plaintiff asserted that Defendant's failure to provide any explanation for his suspension, and its subsequent conversion of the suspension to unpaid status, violated both the procedural and substantive protections set forth in A.R.S. § 23-352.

26. Moreover, Plaintiff's Demand Letter underscored that Defendant's conduct contravened the principles of A.R.S. § 23-1501 et seq., which establishes that an employee is protected from retaliatory suspension or disciplinary actions if such actions are in response to the employee's disclosure of an employer's violation of law, conduct jeopardizing public safety, or practices that contravene the public policy of Arizona. Plaintiff reiterated that his disclosures concerning

9

Defendant's unlawful employment practices and his report of workplace sexual harassment were activities protected under both A.R.S. § 23-1501 and federal whistleblower statutes, and as such, Defendant's actions were not only unwarranted but also a clear violation of his statutory rights.

27. In the Demand Letter, Plaintiff formally requested immediate reinstatement to his position with full pay and benefits, a cessation of all retaliatory conduct, and a suspension of any disciplinary measures pending the resolution of the mediation process. Plaintiff emphasized that these demands were reasonable and aimed at preventing further economic harm and emotional distress, and were in alignment with his statutory rights under both Arizona and federal law. Plaintiff further noted that Defendant's refusal to adhere to these fundamental due process requirements could subject it to additional liability under the Arizona Employment Protection Act and potentially under the Federal Anti-Retaliation Provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).

28. Despite Plaintiff's reasonable efforts to resolve the matter without resorting to litigation, Defendant failed to respond to the Demand Letter in any capacity, thereby demonstrating a blatant disregard for Plaintiff's concerns and for its legal obligations. Defendant's failure to engage in any meaningful dialogue or interactive process to address the issues raised in the Demand Letter constitutes a continued course of retaliatory conduct and an escalation of the harm already inflicted upon Plaintiff. Defendant's inaction is particularly egregious given that the protections enshrined in A.R.S. § 23-352 and A.R.S. § 23-1502 impose an affirmative duty upon employers to provide adequate procedural safeguards and to respond to employee grievances involving adverse employment actions.

29. Defendant's refusal to reinstate Plaintiff, coupled with its insistence on maintaining his unpaid status, constitutes a further violation of the Arizona Employment Protection Act and is indicative of Defendant's retaliatory animus. Moreover, Defendant's intransigence and continued

punitive measures were undertaken with full knowledge that Plaintiff's suspension was based on pretextual and legally insufficient grounds, thereby compounding the economic harm, reputational damage, and emotional distress inflicted upon Plaintiff. By maintaining its adverse actions in the face of Plaintiff's clear and detailed explanation of his rights, Defendant acted with malice, willful disregard, and reckless indifference to Plaintiff's statutory entitlements, thereby justifying the imposition of punitive damages as a deterrent to similar future conduct.

30. Plaintiff's economic losses, including lost wages, diminished future earning capacity, and the negative impact on his professional reputation, have been directly and proximately caused by Defendant's unlawful actions. Defendant's conduct also exacerbated Plaintiff's emotional distress and mental anguish, as he was subjected to a protracted period of uncertainty, humiliation, and professional ostracization. Given Defendant's bad faith conduct and its refusal to engage in any remedial efforts, Plaintiff is entitled to compensatory and punitive damages, as well as injunctive relief, to prevent further retaliatory actions and ensure that Defendant complies with its obligations under both Arizona and federal law.

31. Plaintiff's suspension without pay also constitutes a direct violation of the Arizona Employment Protection Act, A.R.S. § 23-1501 et seq., and A.R.S. § 23-1502, which protect employees from retaliatory discharge, suspension, or other disciplinary actions for reporting illegal conduct or activities that pose a risk to public safety and welfare. Defendant's failure to reinstate Plaintiff or even engage in meaningful dialogue in response to his demand letter is a further indication of its bad faith and retaliatory animus.

32. Additionally, Plaintiff's actions were further protected under Title VII of the Civil Rights Act of 1964, as his initial report involved allegations of sexual harassment and discrimination in the workplace. Defendant's failure to conduct a meaningful investigation, its refusal to take corrective measures, and its subsequent retaliatory actions are clear violations of the anti-

11

retaliation provisions of Title VII, which mandate employer compliance with anti-discrimination standards and protect employees who report such conduct.

33. As a direct and proximate result of Defendant's retaliatory and unlawful conduct, Plaintiff has suffered severe emotional distress, loss of reputation, and financial harm, including lost wages, benefits, and career opportunities. Defendant's actions were carried out willfully, maliciously, and with reckless disregard for Plaintiff's rights, thereby justifying an award of punitive damages to deter similar conduct in the future.

## IV. CAUSES OF ACTION

### COUNT I:
### RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (42 .S.C. § 2000E ET SEQ.)

34. Plaintiff realleges and incorporates by reference the allegations outlined in Paragraphs 1 through 33 of this Complaint as if fully stated herein. All preceding paragraphs are restated and reasserted with the same force and effect to support this cause of action. Plaintiff asserts that Defendant's retaliatory conduct, including the adverse employment actions taken against him, was a direct response to his engagement in protected activities under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

35. Plaintiff engaged in protected activity under 42 U.S.C. § 2000e-3(a) by reporting workplace sexual harassment and opposing discriminatory practices that were violative of Title VII's prohibitions against discrimination on the basis of sex. Plaintiff's initial report in October 2023 regarding the unlawful conduct directed toward a fellow female employee, and his subsequent opposition to Defendant's discriminatory responses, are statutorily protected activities under the anti-retaliation provisions of 42 U.S.C. § 2000e-3(a), which safeguards employees from retaliation for opposing discriminatory practices or participating in protected proceedings under

12

Title VII.

36. In response to Plaintiff's engagement in these protected activities, Defendant immediately initiated a series of adverse employment actions, which included, but were not limited to:

A. **Unjustified Suspension:** On or about May 26, 2024, Defendant suspended Plaintiff with pay, without providing any legitimate or non-retaliatory reason for this action. The suspension was imposed without due process, notice, or any meaningful opportunity for Plaintiff to defend himself against the vague accusations, thereby violating the procedural requirements established under Title VII.

B. **Conversion of Leave Status**: On June 28, 2024, Defendant escalated its retaliatory campaign by converting Plaintiff's suspension from paid to unpaid status, effectively stripping him of his income and causing significant financial hardship. This change was implemented under the pretext of "needing to utilize other personnel," which was demonstrably false and intended solely to inflict economic harm on Plaintiff as punishment for his protected disclosures.

C. **Public Posting of Plaintiff's Position**: During the pendency of Plaintiff's suspension, Defendant posted his position on multiple job boards, signaling its intent to replace Plaintiff permanently, thereby creating an atmosphere of uncertainty and professional humiliation. This action undermined Plaintiff's job security and sent a clear message to other employees that engaging in protected activities would result in swift and punitive consequences.

D. **Creation of a Hostile Work Environment**: Defendant's retaliatory actions created an intolerable working environment, marked by a pattern of harassment, isolation, and intimidation, which was designed to pressure Plaintiff into resigning or abandoning his complaints. Such actions were not only retaliatory but also aimed at chilling Plaintiff's

13

exercise of his rights and preventing further opposition to unlawful practices.

37. **Defendant's adverse actions** were taken with a retaliatory animus, as evidenced by the timing of these measures, which closely followed Plaintiff's protected activities, and the absence of any legitimate business justification. Defendant's conduct was intended to dissuade Plaintiff and other employees from asserting their rights under Title VII, in direct contravention of the principles established in *Burlington Northern & Santa Fe Railway Co. v. White,* **548 U.S. 53 (2006),** where the U.S. Supreme Court held that an adverse action is unlawful if it might dissuade a reasonable employee from making or supporting a charge of discrimination.

38. Defendant's retaliatory actions have proximately caused Plaintiff to suffer significant harm, including but not limited to, loss of income, diminished professional reputation, emotional distress, and severe humiliation. The Plaintiff's career trajectory and future employment prospects have been irreparably damaged as a result of Defendant's unlawful conduct. Defendant's actions were undertaken with malice, willful disregard, and reckless indifference to Plaintiff's rights under Title VII, thereby justifying the imposition of punitive damages to punish Defendant and deter similar future conduct.

39. Plaintiff is entitled to all remedies available under 42 U.S.C. § 2000e-5(g) and 42 U.S.C. § 1981a, including, but not limited to:

A. Reinstatement to his position with full back pay and benefits to restore Plaintiff to the status quo ante;

B. Compensatory Damages for the emotional pain, suffering, humiliation, and reputational harm Plaintiff has suffered;

C. Punitive Damages due to the egregious, willful, and malicious nature of Defendant's conduct.

D. Equitable Relief in the form of an injunction against further retaliatory actions and a mandatory requirement for Defendant to implement training programs to educate its employees about their rights and the employer's obligations under Title VII;

E. **Reasonable Legal Fees and Costs**, as provided under **42 U.S.C. § 2000e-5(k)**, given the complexity and nature of the retaliation claim;

F. **Prejudgment and Post-Judgment Interest** on all amounts awarded, to ensure that Plaintiff is fully compensated for the duration of this protracted and unjust dispute.

40. By reason of the foregoing, Plaintiff has been severely harmed and is entitled to full and fair compensation for all losses and damages suffered as a result of Defendant's unlawful retaliatory conduct.

**COUNT II**
**VIOLATION OF THE ARIZONA EMPLOYMENT PROTECTION ACT**
**(A.R.S. § 23-1501 ET SEQ.)**

41. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 40 of this Complaint as if fully stated herein. Each and every preceding paragraph is incorporated to support Plaintiff's claim that Defendant engaged in unlawful employment practices in violation of the Arizona Employment Protection Act, A.R.S. § 23-1501 et seq. Plaintiff asserts that Defendant's adverse employment actions were undertaken with retaliatory intent, were unsupported by any legitimate business justification, and violated Arizona's statutory protections against wrongful termination, retaliatory suspension, and other adverse employment actions.

42. Defendant's suspension of Plaintiff without cause, failure to provide specific reasons for the suspension, and subsequent adverse employment actions constitute multiple violations of A.R.S. § 23-1501 and A.R.S. § 23-1502, which prohibit employers from terminating or otherwise

15

disciplining employees in retaliation for disclosing violations of state or federal law, engaging in whistleblower activities, or opposing practices that are contrary to public policy. Under A.R.S. § 23-1501(3)(c), it is an unlawful employment practice for an employer to suspend, demote, or terminate an employee in response to the employee's exercise of statutory rights or for reporting to a public body what the employee reasonably believes to be a violation of law. Plaintiff's disclosures regarding workplace sexual harassment and Defendant's employment of undocumented workers fall squarely within the types of protected activities contemplated by A.R.S. § 23-1501, which protects employees from reprisal for opposing illegal or unethical conduct by their employer.

43. Defendant's retaliatory conduct further contravenes the procedural due process protections established under **A.R.S. § 23-352**, which mandates that employers provide written notice of the specific reasons for any adverse employment action, especially in cases where the action could have a substantial impact on the employee's livelihood, contractual rights, or professional reputation. Although **A.R.S. § 23-352** primarily applies to terminations, Arizona courts have interpreted this statute to encompass suspensions and other adverse disciplinary actions where public policy concerns are at issue (see **Wagenseller v. Scottsdale Memorial Hospital, 147 Ariz. 370 (1985)**). Here, Defendant's suspension of Plaintiff without explanation, its conversion of his suspension to unpaid status, and its subsequent refusal to reinstate him were carried out in a manner that deprived Plaintiff of his procedural and substantive rights under the Arizona Employment Protection Act, as Defendant wholly failed to provide a legitimate, non-retaliatory reason for these actions.

44. Defendant's actions were taken not only in response to Plaintiff's protected disclosures but also in direct retaliation for his attempts to assert his rights under Arizona law. Plaintiff was suspended with no notice or explanation on May 26, 2024, shortly after his report to the U.S.

Department of Homeland Security and after filing an internal complaint regarding workplace harassment. Defendant then escalated the punitive measures by changing Plaintiff's leave status from paid to unpaid on June 28, 2024, thereby inflicting substantial financial harm on Plaintiff and signaling its intent to undermine his professional standing. Defendant's failure to engage in any form of interactive process or to provide written justification for its actions is a clear violation of A.R.S. § 23-352, and its sustained campaign of retaliatory conduct against Plaintiff is precisely the type of employer behavior that the Arizona Employment Protection Act was enacted to prevent.

45. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to:

A. **Loss of Wages**: Plaintiff has been deprived of his rightful earnings as a result of the unjust suspension and subsequent conversion to unpaid status. Defendant's actions have resulted in significant financial instability, as Plaintiff was left without income for a substantial period, impairing his ability to meet his financial obligations.

B. **Lost Employment Opportunities**: Defendant's public posting of Plaintiff's position and its ongoing refusal to reinstate him have severely damaged Plaintiff's professional reputation, making it difficult for him to secure comparable employment. Plaintiff's career trajectory has been irreparably harmed, and his standing within the industry has been tarnished due to the Defendant's unlawful conduct.

C. **Emotional Distress and Mental Anguish**: Plaintiff has suffered severe emotional distress, anxiety, and humiliation as a result of Defendant's retaliatory actions. The uncertainty surrounding his employment status, coupled with Defendant's public denouncement of his role, has caused Plaintiff significant mental and emotional suffering. Defendant's deliberate efforts to isolate and ostracize Plaintiff have exacerbated this

distress, creating an environment of hostility and fear.

D. **Damage to Professional Reputation**: Defendant's actions have severely impacted Plaintiff's reputation within the professional community. The public posting of his position and the defamatory narrative that was circulated among employees have created a stigma, leading to long-term reputational harm.

46. The Plaintiff is entitled to all remedies available under A.R.S. § 23-1501 et seq., including reinstatement to his former position, full back pay, and compensation for the economic losses, emotional distress, and reputational harm he has suffered. Plaintiff further seeks punitive damages given the willful, malicious, and retaliatory nature of Defendant's conduct, which was undertaken with reckless disregard for Plaintiff's rights and was intended to set an example to deter other employees from engaging in protected activities.

47. By reason of the foregoing, Defendant has violated the Arizona Employment Protection Act, and Plaintiff is entitled to compensatory and punitive damages, as well as injunctive and declaratory relief, to be restored to his rightful position and to prevent further harm to his career and professional standing.

## COUNT III
## VIOLATION OF THE ARIZONA WHISTLEBLOWER ACT
### (A.R.S. § 38-532)

48. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 47 as if fully stated herein.

49. Defendant's retaliatory conduct, including but not limited to Plaintiff's suspension without cause, conversion of his suspension from paid to unpaid status, and posting of his position while Plaintiff was still nominally employed, was carried out in direct response to Plaintiff's protected disclosures concerning the illegal employment of undocumented workers in violation of federal

18

law.

50. Under A.R.S. § 38-532, an employer is prohibited from taking adverse employment actions against an employee who discloses, in good faith, information that the employee reasonably believes evidences a violation of any law, rule, or regulation. Plaintiff's disclosures to the U.S. Department of Homeland Security regarding Defendant's unlawful employment practices are expressly protected under this statute.

51. Defendant's suspension of Plaintiff without providing written notice or due process, and its subsequent punitive measures, were intended to retaliate against Plaintiff for engaging in protected whistleblower activities and to dissuade other employees from reporting similar unlawful conduct.

52. As a direct and proximate result of Defendant's violations of the Arizona Whistleblower Act, Plaintiff has suffered economic losses, emotional distress, and reputational damage. Plaintiff is entitled to all remedies available under A.R.S. § 38-532, including reinstatement, compensatory damages, and punitive damages for Defendant's willful and egregious conduct.

## COUNT IV
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

53. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 52 as if fully stated herein.

54. Under Arizona law, every employment relationship contains an implied covenant of good faith and fair dealing, which obligates both parties to treat each other fairly and refrain from taking actions that would deprive the other of the benefits of the employment agreement or relationship.

55. Defendant breached this implied covenant by engaging in a pattern of retaliatory conduct aimed at punishing Plaintiff for exercising his rights and for making disclosures protected under

19

state and federal law.

56. Defendant's actions, including the unjustified suspension, conversion to unpaid status, and efforts to permanently replace Plaintiff, were taken in bad faith and with the intent to deprive Plaintiff of his rightful benefits under his employment, thereby frustrating the purposes of the employment relationship.

57. As a result of Defendant's breach, Plaintiff has suffered financial loss, reputational harm, and emotional distress. Plaintiff is entitled to damages and equitable relief, including but not limited to reinstatement and back pay.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

58. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 57 as if fully stated herein.

59. Defendant's conduct in suspending Plaintiff without notice, converting his suspension to unpaid status without justification, and publicly posting his position, while making no legitimate attempt to address the harassment concerns he raised, was extreme and outrageous. Defendant's conduct was intended to cause Plaintiff significant distress or was carried out with reckless disregard for the probability that such distress would result.

60. Defendant knew or should have known that its actions would cause Plaintiff severe emotional distress, given the impact of a sudden loss of income and the public nature of its adverse actions, which effectively damaged Plaintiff's professional reputation and humiliated him within the company and the broader community.

61. As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff has suffered severe emotional and mental anguish, including anxiety, depression, insomnia, and loss of enjoyment of life. The Plaintiff is entitled to compensatory damages for the emotional

20

harm inflicted and punitive damages due to the malicious nature of the Defendant's conduct.

## COUNT VI
### CONSTRUCTIVE DISCHARGE

62. Plaintiff realleges and incorporates by reference the allegations outlined in Paragraphs 1 through 61 as if fully stated herein.

63. Defendant's retaliatory actions, including the unjustified suspension, conversion to unpaid status, and public posting of Plaintiff's position, created an intolerable working environment that was hostile, humiliating, and designed to coerce Plaintiff into resigning.

64. Under Arizona law, an employee is deemed to be constructively discharged when an employer makes working conditions so intolerable that a reasonable person in the employee's position would feel compelled to resign.

65. Defendant's conduct went beyond mere disciplinary measures and was a deliberate effort to undermine Plaintiff's employment, professional reputation, and well-being. Defendant's refusal to address Plaintiff's reasonable concerns or to provide any explanation for the adverse actions taken against him rendered Plaintiff's continued employment untenable.

66. As a result of the hostile working environment and Defendant's calculated actions, Plaintiff's effective resignation was not voluntary but was instead a foreseeable consequence of Defendant's unlawful conduct. Plaintiff is entitled to damages for wrongful termination, loss of income, emotional distress, and other compensatory damages.

## COUNT VII
### DEFAMATION (SLANDER AND LIBEL)

67. Plaintiff realleges and incorporates by reference the allegations outlined in Paragraphs 1 through 66 as if fully stated herein.

68. Subsequent to Plaintiff's service of a certified demand letter, dated [insert date of letter], in which Plaintiff demanded reinstatement of their position or reinstatement to paid

suspension pending mediation, or payment of $1.5 million in damages, Defendant's management, including Senior Employees, maliciously and falsely accused Plaintiff of engaging in sexual harassment. These accusations were made after receipt of Plaintiff's demand letter, suggesting retaliatory intent.

69. The defamatory and unsubstantiated accusations were communicated to third parties both inside and outside the organization, including but not limited to, employees, industry contacts, and potential future employers. Such statements were not protected by any privilege and were made with actual malice and reckless disregard for the truth, as Defendant was aware that Plaintiff had not engaged in any such conduct. The timing and nature of the accusations demonstrate that Defendant intended to harm Plaintiff's reputation and professional standing as a direct response to Plaintiff's assertion of their legal rights through the demand letter.

70. Defendant's conduct is in direct violation of Plaintiff's rights under **Texas Civil Practice & Remedies Code § 73.001** (Defamation) and **California Civil Code §§ 44, 45, and 46** (Defamation Per Se), as false allegations of sexual misconduct are inherently damaging and do not require proof of special damages to establish liability. Under **Texas Civil Practice & Remedies Code § 73.001**, defamation is defined as a false statement that injures a person's reputation, exposing them to public hatred, contempt, or ridicule. Similarly, under **California Civil Code § 46**, false allegations of sexual misconduct qualify as slander per se, as they directly impute unchastity or criminal conduct.

71. Moreover, such actions violate public policy against retaliatory conduct as codified under **Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)**, which prohibits retaliation against an employee for engaging in protected activity, including filing complaints or demand letters related to employment disputes.

72. Additionally, the **Fair Employment and Housing Act (FEHA), California Government Code § 12940(h)**, prohibits an employer from retaliating against any individual for opposing discriminatory practices or for asserting their rights under FEHA. Any such retaliatory conduct in response to Plaintiff's demand letter and legal assertion of rights is strictly prohibited

22

under these statutes and constitutes actionable retaliation.

73. The Defendant's actions, including the publication of false accusations of sexual harassment, were intended to injure Plaintiff's reputation, undermine their credibility, and justify the adverse employment actions taken against Plaintiff. These statements were made with malice and a conscious disregard for Plaintiff's rights.

74. As a direct and proximate result of Defendant's defamatory and retaliatory conduct, Plaintiff has suffered irreparable harm, including but not limited to, loss of professional reputation, emotional distress, humiliation, and damage to Plaintiff's standing within their professional community. Plaintiff's prospects for future employment have been adversely affected as these defamatory statements have created a false and negative impression of Plaintiff's character and professional conduct.

75. Defendant's retaliatory actions and defamatory statements are also in violation of the Fair Employment and Housing Act (FEHA), California Government Code § 12940(h), which prohibits retaliation against an employee for asserting their rights under the statute, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12203, if applicable, given that the demand letter also addressed accommodations or discrimination based on disability.

76. Plaintiff is entitled to recover compensatory damages, including damages for loss of income, damage to reputation, and emotional distress. Plaintiff is also entitled to punitive damages due to Defendant's intentional, malicious, and egregious conduct in making and disseminating false accusations of sexual harassment with the intent to retaliate against Plaintiff for asserting their legal rights.

## COUNT VIII
### WRONGFUL TERMINATION IN VIOLATION OF ARIZONA PUBLIC POLICY
### (A.R.S. § 23-1501)

77. Plaintiff realleges and incorporates by reference the allegations outlined in Paragraphs 1 through 76 as if fully stated herein.

78. Under the Arizona Employment Protection Act, A.R.S. § 23-1501, an employer is prohibited from terminating or constructively discharging an employee if the employee has

23

disclosed information that the employee reasonably believes evidence a violation of law or is related to matters of public concern, such as workplace safety or violations of immigration laws.

79. Plaintiff's disclosures concerning the illegal employment of undocumented workers in violation of 8 U.S.C. § 1324a(a)(1), and his reporting of workplace sexual harassment, were matters of significant public concern and fall under the public policy exception to at-will employment in Arizona.

80. Defendant's retaliatory actions, including suspension without cause, conversion of leave status, refusal to reinstate, and public posting of Plaintiff's position, were undertaken with the intent to force Plaintiff to resign, thereby constituting constructive discharge in violation of Arizona's public policy.

81. As a direct and proximate result of Defendant's wrongful termination and constructive discharge, Plaintiff has suffered lost wages, diminished employment opportunities, reputational harm, and severe emotional distress. Plaintiff is entitled to all remedies available under Arizona law, including reinstatement, compensatory damages, punitive damages, and equitable relief.

## COUNT IX
### VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA)
(29 U.S.C. § 201 et seq.)

82. Plaintiff realleges and incorporates by reference the allegations outlined in Paragraphs 1 through 81 as if fully stated herein.

83. The Fair Labor Standards Act (herein "FLSA"), 29 U.S.C. § 201 et seq., prohibits employers from retaliating against employees for engaging in protected activities, such as reporting violations of wage and hour laws or other employment standards enforced under the FLSA. The Plaintiff's disclosures concerning workplace harassment and the Defendant's unlawful employment practices are activities protected under the FLSA's anti-retaliation provisions.

24

84. Defendant's retaliatory suspension of Plaintiff and conversion of his suspension to unpaid status, without legitimate cause or justification, violated the FLSA's protections against retaliation for reporting workplace violations and engaging in other protected activities.

85. As a result of Defendant's violation of the FLSA, Plaintiff is entitled to reinstatement, back pay for the period he was unjustly placed on unpaid leave, liquidated damages, and reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT X
## NEGLIGENT HIRING, SUPERVISION, AND RETENTION

86. Plaintiff realleges and incorporates by reference the allegations outlined in Paragraphs 1 through 85 as if fully stated herein.

87. Defendant, as Plaintiff's employer, owed a duty to Plaintiff to exercise reasonable care in the hiring, supervision, and retention of its employees and management personnel, and to ensure that such individuals complied with applicable federal and state laws and internal policies.

88. Defendant breached this duty by hiring and retaining management personnel, including the Senior Male Manager accused of sexual harassment, who engaged in illegal conduct, created a hostile work environment, and engaged in retaliatory actions against Plaintiff and other employees. Defendant further breached its duty by failing to properly investigate, discipline, or remove these individuals, despite Plaintiff's repeated reports of misconduct and unlawful behavior.

89. As a direct and proximate result of Defendant's negligent hiring, supervision, and retention of unfit personnel, Plaintiff suffered economic harm, emotional distress, and professional damage. Plaintiff is entitled to compensatory damages, including lost wages and benefits, damages for emotional distress, and punitive damages due to Defendant's reckless disregard for his safety and well-being.

25

## COUNT XI
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

90. Plaintiff realleges and incorporates by reference the allegations outlined in Paragraphs 1 through 89 as if fully stated herein.

91. Plaintiff had a valid and ongoing employment relationship with Defendant, as well as professional relationships within the industry, which constituted advantageous business relationships.

92. Defendant, through its unlawful and retaliatory conduct, willfully and intentionally interfered with Plaintiff's employment relationship by taking adverse employment actions without legitimate cause, publicly posting his position, and engaging in a smear campaign designed to undermine Plaintiff's professional standing.

93. Defendant's tortious interference was not only intended to damage Plaintiff's employment prospects within the organization but also to deter other potential employers from considering Plaintiff for comparable positions.

94. As a result of Defendant's tortious interference, Plaintiff has suffered economic harm, including lost wages and future earning capacity, as well as reputational damage and emotional distress. Plaintiff is entitled to compensatory damages, punitive damages, and equitable relief, including an injunction to prevent further interference.

## COUNT XII
### BREACH OF CONTRACT

95. Plaintiff realleges and incorporates by reference the allegations outlined in Paragraphs 1 through 94 as if fully stated herein.

96. Plaintiff's employment agreement with Defendant, whether express or implied, established specific terms and conditions governing his employment, including the right to a fair

workplace free from retaliation and discrimination.

97. By suspending Plaintiff without cause, converting his suspension to unpaid status, and refusing to engage in the interactive process to address Plaintiff's concerns, Defendant materially breached the terms of its employment agreement with Plaintiff.

98. Defendant further breached its obligations by failing to adhere to its own internal policies and procedures, which constituted implied contractual terms of Plaintiff's employment.

99. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered economic harm, emotional distress, and damage to his professional reputation. Plaintiff is entitled to compensatory damages for lost wages and benefits, and specific performance of the contract through reinstatement.

## V. PRAYER FOR RELIEF

100. WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and grant the following relief against Defendant, MLEM Properties, Inc., as follows:

A. **Reinstatement** to Plaintiff's former position as Chief Engineer, or to a comparable position, with full back pay, accrued benefits, and seniority rights to restore Plaintiff to the status quo ante, ensuring that he is not further prejudiced by Defendant's unlawful conduct.

B. **Compensatory Damages** for the economic losses incurred, including but not limited to **lost wages, lost employment benefits, lost earning capacity**, and all other pecuniary losses resulting from Defendant's unlawful actions, in an amount to be proven at trial, along with non-economic damages for **emotional distress, humiliation, mental anguish, and loss of enjoyment of life**, attributable to the retaliatory and discriminatory conduct.

C. **Punitive Damages** in an amount sufficient to punish Defendant for its **willful, malicious,**

**and reckless indifference** to Plaintiff's federally and state-protected rights, and to deter Defendant and other similarly situated employers from engaging in such unlawful conduct in the future, pursuant to the anti-retaliation and anti-discrimination provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Arizona Employment Protection Act.

D. **Injunctive Relief**, including but not limited to:

(1) An order requiring Defendant to immediately cease and desist from engaging in further acts of retaliation, discrimination, or other unlawful employment practices against Plaintiff or any other employees who engage in protected activities;

(2) An order compelling Defendant to undertake corrective measures, including the implementation of comprehensive training programs to educate its management and employees regarding their rights and obligations under Title VII, the Arizona Employment Protection Act, and other applicable employment laws;

(3) An order requiring Defendant to post a notice, both electronically and physically at all of its locations, informing all employees of their rights under federal and state law, and the consequences for violations thereof.

E. **Front Pay** in lieu of reinstatement, should reinstatement be determined to be impractical or infeasible, to compensate Plaintiff for the loss of future earnings and employment benefits resulting from Defendant's unlawful actions, until Plaintiff is able to secure comparable employment.

F. **Legal Fees and Costs** as provided under 42 U.S.C. § 2000e-5(k) and A.R.S. § 12-341.01, including all litigation expenses, expert witness fees, and any other costs associated with this action, to the extent allowable by law.

G. **Prejudgment and Post-Judgment Interest** on all monetary awards, calculated at the highest rate allowable under law, from the date of each unlawful act until the date of full satisfaction of any and all judgments awarded.

H. **Declaratory Relief** declaring that Defendant's actions, policies, and practices as described herein are in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Arizona Employment Protection Act, and other applicable state and federal laws.

I. **Liquidated Damages** under applicable federal and state statutes, including but not limited to those under the Fair Labor Standards Act and other employment laws, due to Defendant's bad faith conduct in maintaining Plaintiff's suspension without pay.

J. **Equitable Relief** requires Defendant to expunge any and all references to the disciplinary actions, suspensions, or any other adverse employment actions taken against Plaintiff from his personnel file, and to issue a letter of apology acknowledging Defendant's wrongful conduct.

K. **Any Other Relief** that this Court deems just and proper under the circumstances, including such further legal and equitable relief as may be appropriate to fully restore Plaintiff and to prevent future violations of federal and state employment law.

### VI. DEMAND FOR JURY TRIAL

95. Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Daniel Vargas
34802 W. Western Blvd.
Arlington, Arizona 85322
danny.vargas4546@gmail.com
Tel: (480)297-268
*Plaintiff, Pro Se*

Dated on this 5th day of October 2024.

29